**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY MURR** | : | |
| **3000 Granada Street, Apartment 7** | : | |
| **Fort Lauderdale, FL 33304** | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **R-T SPECIALTY, LLC** | : | |
| **1515 Market Street, Suite 1110** | : | |
| **Philadelphia, PA 19102** | : | |
| | : | |
| **Defendant.** | : | |

## CIVIL COMPLAINT

Plaintiff, Kelly Murr (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against R-T Specialty, LLC (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Family and Medical Leave Act ("FMLA") and the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff is an adult individual residing at the above captioned address.

2. Upon information and belief, Defendant is wholesale distributor of specialty insurance products and services with an office located at 1515 Market Street, Suite 1110, Philadelphia, PA 19102.

3. Defendant is an entity engaged in an industry or activity affecting commerce which employs

50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

4. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in discriminatory and retaliatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in discriminatory and retaliatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

12. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

13. The Charge was assigned a Charge Number 530-2020-03828 and was dual filed with the Pennsylvania Human Relations Commission.

14. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Notice") relative to the Charge and that Notice is dated August 12, 2020.  Plaintiff received the Notice by mail.

15. Plaintiff files the instant Complaint within ninety (90) days of her receipt of the Notice.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

18. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

19. In January of 2009, CRC Insurance hired Plaintiff for the position of Broker Assistant.

20. In May 2010, the employees of CRC Insurance, including Plaintiff, became employees of Defendant.

21. In or about 2011, based on Plaintiff's outstanding work performance, Defendant promoted Plaintiff to the position of Inside Broker.

22. Thereafter, Plaintiff continued to perform her job in an exemplary manner, assisting Brokers in developing, managing, and sustaining profitable business by providing high level technical expertise and customer service.

23. As a result, Defendant awarded to Plaintiff many bonus payments during her eleven (11) year tenure with Defendant.

24. In addition, Defendant provided Plaintiff with a salary increase in or about August of 2018.

25. Shortly thereafter, Plaintiff apprised Defendant that she was suffering from Major Depressive Disorder, Generalized Anxiety Disorder, and Attention Deficit Disorder ("ADD.") Each of these medical conditions are serious health conditions within the meaning of the FMLA and are disabilities within the meaning of the ADA and the PHRA in that they substantially impair the Plaintiff's neurological functioning and one or more of her major life activities, including but not limited to, concentrating and thinking, and she was receiving ongoing treatment from a medical professional.

26. By way of elaboration, Plaintiff attended a meeting with her direct supervisor, Brad McFadden ("McFadden"), Philadelphia Office President, in which Plaintiff disclosed said disabilities to him. McFadden responded in a skeptical tone and probed Plaintiff for more information regarding the number of doctors with whom she had consulted and whether they agreed on her diagnoses. McFadden then referred to the Plaintiff's disabilities as "mental problems" in a demeaning manner, and mocked Plaintiff by instructing her to just

"wake up on the sunny side of the bed...because we all have problems." McFadden's insulting and disrespectful reaction was humiliating to Plaintiff.

27. During the months that followed, McFadden worked to isolate Plaintiff from her coworkers and acted very coldly toward Plaintiff. This was a dramatic shift from the way McFadden interacted with Plaintiff before he learned of her disabilities. Notably, McFadden was not unfriendly to similarly situated, non-disabled Inside Brokers.

28. Additionally, McFadden scolded Plaintiff for "freaking out" her coworkers by mentioning her prescription medication that she required as treatment for her disabilities.

29. As further discrimination and intimidation, McFadden refused to assist Plaintiff when her administrative assistant was insubordinate. Importantly, when Plaintiff stated her intention to involve the Human Resources Department, McFadden threatened, "I dare you to go to HR," thereby indicating that Defendant would terminate her employment should she ever register any complaints.

30. Notwithstanding McFadden's discriminatory remarks and treatment, Plaintiff continued to perform her job well and did not receive any negative feedback on her work performance.

31. In or about the summer of 2019, Plaintiff began to experience severe back pain caused by Scoliosis and Herniated Discs. Each of these medical conditions are serious health conditions within the meaning of the FMLA and disabilities within the meaning of the ADA and the PHRA in that they substantially impair the functioning of her musculoskeletal system and one or more of Plaintiff's major life activities, including, but not limited to, lifting and sitting, and she was receiving ongoing treatment from a medical professional.

32. At all times relevant hereto, Defendant was aware of Plaintiff's disabilities (Scoliosis and Herniated Discs) and/or record of impairment and/or perceived her as disabled.

33. Plaintiff required repeated treatments from a physician for said disabilities and was unable to attend work on days she received treatment. Specifically, Plaintiff received treatments on September 30, 2019 and October 24, 2019. Plaintiff informed McFadden of her need for said reasonable accommodation.

34. On or about December 9, 2019, McFadden observed Plaintiff utilizing a heating pad in connection with treatment of her disabilities.  In response, McFadden ridiculed Plaintiff and questioned her in a contemptuous tone as to "why [she was] even here?"

35. Shortly thereafter, on or about December 16, 2019, McFadden summoned Plaintiff to his office terminated her position of employment based on her disabilities and/or in retaliation for her request for a reasonable accommodation.

36. In connection therewith, McFadden stated that Defendant had decided Plaintiff was "not happy" and had "a lot going on," directly referring to her disabilities, as aforesaid.

37. In response thereto, Plaintiff stated that, in addition to the treatments for Scoliosis/Herniated Discs, she had been continuing to receive treatment for Major Depressive Disorder, Generalized Anxiety Disorder and ADD, which McFadden already knew, and that she had been adjusting to new medications. Plaintiff also mentioned that she had been contemplating requesting a medical leave of absence but was not familiar with the particulars of how to do so and did not know if it was feasible.

38. Despite McFadden's awareness that Plaintiff was receiving continuing treatment with a healthcare provider for these serious health conditions and her need for a medical leave of absence, McFadden failed to engage in the interactive process and failed to provide Plaintiff with the opportunity to exercise her right to a leave of absence and instead terminated her employment with Defendant.

39. Moreover, McFadden discouraged Plaintiff from taking leave and attempted to convince her that separating from the company was preferable if it was "too stressful" for her to work for Defendant.

40. Importantly, McFadden subsequently informed Christopher Taggart, Human Resources Director, that Plaintiff had intended to resign from her position of employment, which was blatantly false. McFadden also wrongfully accused Plaintiff of interviewing for a position with a competing company, which also was a complete fabrication.

41. Defendant's articulated reasons for her termination were conflicting, shifting, and obviously pretextual.

42. Plaintiff believes Defendant actually terminated her employment because of her actual and/or perceived disabilities and/or record of impairment.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

43. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

44. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Plaintiff and its agents as being disabled.

45. Plaintiff was qualified to perform the job.

46. Plaintiff was subject to an adverse employment action, including, but not limited to, termination.

47. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse

employment action.

48. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

49. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

50. The purported reason for Defendant's decision is pretextual.

51. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

52. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

53. As a result of Defendant's unlawful disability discrimination, Plaintiff suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

54. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

55. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Plaintiff and its agents as being disabled.

56. Plaintiff was qualified to perform the job.

57. Plaintiff was subject to an adverse employment action, including, but not limited to, termination.

58. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse

employment action.

59. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

60. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

61. The purported reason for Defendant's decision is pretextual.

62. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

63. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

64. As a result of Defendant's unlawful disability discrimination, Plaintiff suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT III – DISABILITY DISCRIMINATION
### (HOSTILE WORK ENVIRONMENT)
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

65. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

66. By the conduct set forth above of Defendant, engaged in unlawful employment discrimination.

67. Taken together, the acts outlined above constitute a hostile work environment based on disability.

    a. Plaintiff suffered intentional discrimination because of her membership in a protected class – disabled.

    b. Such discrimination was severe, pervasive, and regular.

    c. Such discrimination detrimentally affected Plaintiff.

d. Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

68. There existed in Defendant *respondeat superior* liability because the harassment was created by a supervisor with authority over Plaintiff and was above Plaintiff in the chain of command.

69. The unlawful employment practices outlined above were intentional.

70. Defendant is not entitled to an affirmative defense.

71. Defendant knew or should have known of the disability harassment.

72. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

73. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

74. The above described acts of Defendant with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the federally protected rights of Plaintiff.

75. Said acts of Defendant were committed by and through its senior management employee within his employment relationship with Defendant.

76. The extreme and outrageous acts of Defendant merit the imposition of punitive damages.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – DISABILITY DISCRIMINATION
### (HOSTILE WORK ENVIRONMENT)
### PENNSYLVANIA HUMAN RELATIONS ACT

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. By the conduct set forth above of Defendant, engaged in unlawful employment discrimination.

79. Taken together, the acts outlined above constitute a hostile work environment based on disability.

   a.  Plaintiff suffered intentional discrimination because of her membership in a protected class – disabled.

   b.  Such discrimination was severe, pervasive, and regular.

   c.  Such discrimination detrimentally affected Plaintiff.

   d.  Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

80. There existed in Defendant *respondeat superior* liability because the harassment was created by a supervisor with authority over Plaintiff and was above Plaintiff in the chain of command.

81. The unlawful employment practices outlined above were intentional.

82. Defendant is not entitled to an affirmative defense.

83. Defendant knew or should have known of the disability harassment.

84. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

85. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

86. The above described acts of Defendant with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the federally protected rights of Plaintiff.

87. Said acts of Defendant were committed by and through its senior management employee within his employment relationship with Defendant.

88. The extreme and outrageous acts of Defendant merit the imposition of punitive damages.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V - RETALIATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

89. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

90. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation for her disabilities.

91. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

92. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

93. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

94. Plaintiff engaged in activity protected by the PHRA when she requested a reasonable accommodation for her disabilities.

95. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

96. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – FMLA INTERFERENCE
## FAMILY AND MEDICAL LEAVE ACT

97. The foregoing paragraphs are incorporated herein by reference as though set forth in full.

98. Pursuant to the FMLA, Plaintiff was entitled to a total of twelve (12) workweeks of leave during any twelve (12) month period . . . because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

99. The actions of the Defendant, in interfering with, restraining, and/or denying the exercise or attempt to exercise Plaintiff's right to leave, constituted a violation of the FMLA.

100. The aforesaid actions of the Defendant were willful, malicious, wanton, in bad faith and in reckless disregard of Plaintiff's rights.

101. As a direct result of the willful, wanton, reckless, careless and negligent acts of the Defendant, as aforesaid, Plaintiff has suffered a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay and interest due thereon.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kelly Murr, requests that the Court grant her the following relief

against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the FMLA and the PHRA.

(j)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 12, 2020 **By:** */s/ David M. Koller*
David M. Koller, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com

*Counsel for Plaintiff*

15